## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01655-NYW

D.G.,[1]

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2]

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") filed by Plaintiff D.G. on July 9, 2018. Pursuant to the Parties' consent, [Doc. 18], this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2; *see also* [Doc. 20]. After review of the Parties' briefing, the Administrative Record, and applicable case law, this court respectfully **REVERSES** and **REMANDS** the Commissioner's decision.

---

[1] This court refers to Plaintiff using his initials pursuant to D.C.COLO.LAPR 5.2(b).

[2] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## BACKGROUND

D.G. alleges that he became disabled on April 19, 2018 due to the following medical conditions: symptomatic human immunodeficiency virus ("HIV"), fibromyalgia, major depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), spinal stenosis/lower back pain, and plantar fasciitis. [Doc. 12-5 at 290; Doc. 12-6 at 320].[3] Due to these conditions, he stopped working on April 19, 2018. [Doc. 12-6 at 320]. Given his various ailments, D.G. filed an application for DIB and SSI on July 9, 2018. [Doc. 12-4 at 198].[4] The Social Security Administration denied Plaintiff's applications administratively on February 13, 2019. [Doc. 12-4 at 162-65]. Plaintiff requested reconsideration of the decision, [*id.* at 166-67], which was denied. [*Id.* at 170]. Plaintiff then submitted a request for a hearing before an Administrative Law Judge, [*id.* at 181-82], and a hearing was held before Administrative Law Judge Richard Geib (the "ALJ") on August 19, 2020. *See* [Doc. 12-2 at 34].

Following the hearing, the ALJ issued an unfavorable decision on October 15, 2020. [Doc. 12-2 at 16]. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Act and that he had not engaged in substantial gainful activity since the alleged disability onset date of April 19, 2018. [*Id.* at 18]. The ALJ also determined that Plaintiff had the following severe impairments: fibromyalgia, major depressive disorder, and generalized anxiety disorder. [*Id.*]. In contrast, the ALJ concluded that Plaintiff's HIV, back pain, and plantar fasciitis did not amount to

---

[3] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the ECF system.

[4] The court notes that some record documents reflect a different July 2018 date for Plaintiff's DIB application. *See, e.g.*, [Doc. 12-5 at 260, 290]. However, Plaintiff represents that he applied for DIB on July 9, 2018. [Doc. 13 at 1]. The exact date on which D.G. applied for benefits is not material to the resolution of this case.

severe impairments. [*Id.*]. The ALJ determined that Plaintiff was not disabled because his residual functional capacity ("RFC") permitted him to perform a range of light work as defined in 20 C.F.R § 404.1657(b),[5] with the following limitations:

> [He] can frequently climb ramps and stairs; frequently claim ladders, ropes, and scaffolds; can frequently stoop, kneel, crouch or crawl; should avoid concentrated exposure to extreme cold; and can perform simple, routine tasks; and can have occasional superficial contact with the general public and coworkers.

[*Id.* at 22].

Plaintiff requested review of the ALJ decision, which the Appeals Council denied on April 19, 2021, [*id.* at 1], rendering the ALJ's decision the final decision of the Commissioner. He then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on June 16, 2021. [Doc. 1]. This matter is ripe for review, and I consider the Parties' arguments below.

## LEGAL STANDARDS

An individual is eligible for DIB under the Act if he is insured, has not attained retirement age, has filed an application for DIB, and has a disability as defined in the Act. 42 U.S.C. § 423(a)(1). In addition, SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. The earliest a claimant can receive SSI is the month following the month within which the claimant filed his application, and thus the claimant must establish that he was disabled on or prior to his application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also* 20 C.F.R. § 416.912(b)(1) ("Before we make a

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The disabling impairment must last, or be expected to last, for at least 12 consecutive months.  *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The burden is on the claimant to prove he was disabled prior to his date last insured.  *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the burden

of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## ANALYSIS

D.G. identifies several issues in the ALJ's decision denying benefits that he maintains constitute reversible error. He first asserts that the ALJ erred in not abiding by res judicata principles with respect to an earlier application for benefits and subsequent administrative decision, wherein the ALJ determined that D.G. was limited to sedentary work. [Doc. 13 at 6]. In addition, he argues that the ALJ's RFC determination fails to account for his moderate limitations in concentration, pace, and persistence, as well as his inability to tolerate stress or adapt. [*Id.* at 11]. He also argues that the ALJ's RFC determination is inconsistent with the medical record evidence. [*Id.*]. Finally, D.G. asserts that the ALJ improperly relied on erroneous vocational

expert testimony that conflicts with the Dictionary of Occupational Titles.  [*Id.* at 17].  The court addresses these arguments, as well as the Commissioner's counterarguments, below.

## I.   Res Judicata

First, Plaintiff argues that the ALJ's decision denying him benefits was erroneous because it "fails to properly acknowledge or consider res judicata principles" in that it is inconsistent with an earlier ALJ determination that D.G. was limited to sedentary work.  [*Id.* at 6].  The Administrative Record reflects that D.G. filed a prior application for benefits on April 14, 2011, alleging a disability onset date of April 1, 2011. [Doc. 12-3 at 76].  After a hearing, an ALJ issued a decision on April 22, 2013 finding that Plaintiff was not disabled.  [*Id.* at 84-85].  Relevant here, the first ALJ concluded that D.G. had the RFC "to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a)."  [*Id.* at 81].  The Appeals Council affirmed, rendering the decision final.  [*Id.* at 93].  In assessing D.G.'s more recent application for benefits, the ALJ referenced principles of administrative res judicata, but did so in the context of "the presumption of continuing nondisability," finding that such a presumption did not apply because Plaintiff had submitted new and material medical evidence.  [Doc. 12-2 at 16].

Generally speaking, the doctrine of res judicata dictates that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "Res judicata may apply in a social security case when a previous determination is made about the claimant's rights 'on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action.'"  *Gonzales v. Colvin*, 515 F. App'x 716, 720 (10th Cir. 2013) (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009)); *see also* 20 C.F.R. § 404.957(c)(1) (explaining when res judicata applies in Social Security actions).  Plaintiff directs

the court to two out-of-Circuit cases, as well as administrative guidance, which he asserts demonstrates that the ALJ erred committed reversible error by failing to adopt the prior ALJ's RFC assessment:  *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997), and *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987).  *See* [Doc. 13 at 6-8].

In *Drummond*, the Sixth Circuit held that under the doctrine of res judicata, an ALJ was bound by a prior decision of another ALJ who had concluded that the claimant was limited to sedentary work.  *Drummond*, 126 F.3d at 838, 842.  The then-Commissioner in *Drummond* argued on appeal that the Social Security Administration was not bound by the first ALJ's decision because it was not a party to the proceedings before the ALJ.  *Id.* at 840-41.  The Sixth Circuit rejected this argument, concluding that permitting the Commissioner "unfettered discretion to reexamine issues previously determined absent new and additional evidence" would preclude finality in Social Security decisions.  *Id.* at 842.  The court determined that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Id.* at 842.

In light of *Drummond*, the Social Security Administration issued Social Security Acquiescence Ruling ("AR") 98-4(6).[6]  *See* AR 98-4(6), 63 Fed. Reg. 29,771 (June 1, 1998).  The Social Security Administration explained that pursuant to *Drummond*,

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt [an RFC finding] from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the

---

[6] Acquiescence rulings "explain[] how [the Social Security Administration] will apply a holding in a decision of a United States Court of Appeals that [the Administration] determine[s] conflicts with [its] interpretation of a provision of" the Act.  AR 98-4(6), 63 Fed. Reg. at 29,772.  These rulings "do not have the force and effect of law," but nevertheless "constitute Social Security Administration interpretations of its own regulations and the statute which it administers" and are "entitled to deference except when they are plainly erroneous or inconsistent with the Act."  *Walker v. Sec'y of Health & Hum. Servs.*, 943 F.2d 1257, 1259 (10th Cir. 1991) (citations omitted).

> unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 63 Fed. Reg. at 29,773.  The Social Security Administration further noted, however, that the Acquiescence Ruling applied "only to disability findings in cases involving claimants who reside in Kentucky, Michigan, Ohio, or Tennessee."  *Id.*

Additionally, in *Lively*, the Fourth Circuit held that an ALJ was bound by an earlier administrative decision finding that the claimant was limited to light work, which came just two weeks prior to the claimant's fifty-fifth birthday and subsequent second DIB application.  *Lively*, 820 F.2d at 1392.  When discussing the second ALJ's determination that the claimant could perform exertional-level work, the court stated that it was "utterly inconceivable that [the claimant's] condition had so improved in two weeks as to enable him to perform medium work."  *Id.*  Because the second ALJ was bound by the prior decision limiting the claimant to light work, the claimant was entitled to benefits once he reached the age of 55.  *Id.*  The Fourth Circuit, however, has subsequently explained that *Lively* was a "rare" and "heavily fact-dependent case."  *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 477-78 (4th Cir. 1999).  It further explained that while the court "might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, [it] would grow ever less confident as the timeframe expands."  *Id.* at 477.

The Tenth Circuit has briefly addressed *Lively* and *Drummond*, noting that in each of these cases, "the second ALJ reevaluated evidence already presented and adjudicated by the first ALJ."  *Gonzales*, 515 F. App'x at 721.  In *Gonzales*, the Tenth Circuit contrasted the Fourth and Sixth Circuit cases with *Rucker v. Chater*, 92 F.3d at 492 (7th Cir. 1996), wherein the Seventh Circuit "held that an ALJ's evaluation of the claimant's second application for benefits was 'an

independent consideration of her eligibility at the time of her second application.'" *Gonzales*, 515 F. App'x at 721 (quoting *Rucker*, 92 F.3d at 495).   In *Gonzales*, the Tenth Circuit ultimately declined to pass on whether a second ALJ was bound by a prior administrative decision where the claimant's "second application involved a different, unadjudicated period involving over five years of new evidence" and "the second ALJ did not reevaluate evidence nor did he contradict the first ALJ's ultimate finding that [the claimant] was not disabled."   *Id.*

Although *Gonzales* is an unpublished decision not directly bearing on the question before the court, the court finds the Tenth Circuit's discussion instructive to this court's analysis.   Here, Plaintiff's first DIB application covered the time period of April 1, 2011 through April 22, 2013. *See* [Doc. 12-3 at 78]; *see also Martinez v. Astrue*, 389 F. App'x 866, 868 (10th Cir. 2010) (the relevant time period for assessing whether the claimant was disabled was the time between the disability onset date and the date of the ALJ decision).   Plaintiff's second, and current, application for benefits covers April 19, 2018 through October 15, 2020.   [Doc. 12-2 at 18; Doc. 12-5 at 290]. And as the Commissioner points out, [Doc. 19 at 11], the medical record in this case spans from 2016 through 2020.   *See, e.g.*, [Doc. 12-7 at 435-40; Doc. 12-8 at 920-23].   In other words, the two relevant time periods for determining disability are separated by several-year gap, and the second ALJ decision involved "a different unadjudicated period" involving several years of new evidence that was not before the first ALJ.   *Gonzales*, 515 F. App'x at 721.   Accordingly, the court is respectfully unpersuaded by Plaintiff's reliance on *Drummond* and *Lively*, which are meaningfully distinguishable from the instant case.   Because the time period under review in this instance was separate and distinct from the time frame at issue in Plaintiff's first application, the court cannot conclude that the ALJ was bound by the prior decision under res judicata principles.   *Montano v. Saul*, No. 20-cv-00160-KLM, 2021 WL 1169982, at *6 (D. Colo. Mar. 29, 2021) ("[T]he second,

current ALJ evaluated Plaintiff's eligibility over a period not overlapping with the first and which including a large amount of additional evidence.  The Court therefore cannot find that the current ALJ was bound by any prior adjudication by a different ALJ pertaining to an earlier period.") (citations omitted).

In addition, while Plaintiff argues that "no substantial improvement [in his medical conditions] has been shown by objective evidence, and in fact, [his] conditions and resulting RFC have deteriorated," citing to evidence from the Administrative Record that he contends demonstrates that his "prior RFC of sedentary has not improved," [Doc. 13 at 9-10], the court respectfully finds D.G.'s argument to be an invitation for the court to reweigh the evidence that was before the ALJ, which this court cannot do.  *See Lax*, 489 F.3d at 1084 (the court cannot "reweigh the evidence or substitute our judgment for the Commissioner's") (quotation omitted). While the evidence cited by Plaintiff may suggest a lack of improvement in Plaintiff's condition, "such a determination is fact-driven and thus not appropriate for resolution by this court." *Zelenak v. Saul*, No. 20-cv-02045-REB, 2021 WL 973390, at *3 (D. Colo. Mar. 16, 2021) (concluding that res judicata did not apply where nine months elapsed between the date of the first disability determination and the claimant's second application for benefits).

Here, the ALJ cited specific record evidence that he relied upon to determine that D.G. is capable of performing light work, including medical examination records revealing that Plaintiff had a "normal painless range of motion in [his] hands with normal coordination and 5/5 bilateral grip strength," [Doc. 12-2 at 23 (citing [Doc. 12-7 at 698-703])], "normal painless range of motion and 5/5 strength in all muscle groups, with no observation of tender points or discomfort, " [*id.* (citing [Doc. 12-7 at 698-703])], and "no acute distress" and "normal musculoskeletal and neurological examinations." [*Id.* at 24 (citing [Doc. 12-7 at 698-703; *id.* at 773-817; *id.* at 862-

908])].  This court's role in reviewing the ALJ's decision is limited, and the interpretation or weighing of this evidence "is a job in the first instance for the ALJ."  *Zelenak*, 2021 WL 973390, at *3.  Because Plaintiff has not articulated a specific challenge to the ALJ's interpretation or weighing of the evidence, he has not demonstrated that the RFC determination was not supported by substantial evidence and has not demonstrated that remand is warranted on this basis.

## II.   Plaintiff's Mental Limitations

Next, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to adequately account for his mental limitations.  [Doc. 13 at 11].  In his decision, the ALJ concluded that D.G. has a "moderate limitation" in concentrating, persisting, or maintaining pace and in interacting with others.  [Doc. 12-2 at 22].  In addition, the ALJ determined that D.G. has a "mild limitation" in adapting or managing oneself.  [*Id.*].  The ALJ's conclusions were based on the opinions of Dr. Christopher Beasley, Dr. John Robinson, and Dr. Mark Suyeishi, the opinions of whom were all deemed "persuasive" by the ALJ.  *See* [*id.* at 21].[7]  Relevant here, Drs. Robinson and Suyeishi each concluded that D.G.'s moderate limitations in concentrating, persisting, or maintaining pace arose from his moderate impairments in (1) the ability to maintain attention and concentration for extended periods; (2) the ability to work in coordination with or in

---

[7] Additionally, in concluding that D.G. is moderately limited in concentrating, persisting, or maintaining pace, the ALJ stated that "[t]he mental status examinations of NP Dooley and the claimant's therapists show the claimant presents with linear and organized thought, average fund of knowledge, and alert attention," citing to records spanning hundreds of pages.  *See* [Doc. 12-2 at 22 (citing [Doc. 12-7 at 397-624; Doc. 12-8 at 861-908])].  This court is wary that such general citations satisfies the ALJ's burden to support his decision with substantial evidence.  *See Romo v. Colvin*, 83 F. Supp. 3d 1116, 1121 n.4 (D. Colo. 2015) ("This court is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion, and I thus repeatedly have found that such general citations do not substantiate the ALJ's disability decision."); *Fritz v. Colvin*, No. 15-cv-00230-JLK, 2017 WL 219327, at *15 (D. Colo. Jan. 18, 2017) ("Such general citations do not constitute substantial evidence in support of the ALJ's decision, and [ALJs] in this district have received fair notice of this concern.") (citing cases).

proximity to others without being distracted by them; and (3) the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number or length of rest periods.  *See* [Doc. 12-3 at 102, 150].

In his RFC assessment, the ALJ found that D.G. "can perform simple, routine tasks."  [Doc. 12-2 at 22].  D.G. asserts that the RFC's limitation to simple and routine tasks fails to adequately account for his limitations in maintaining concentration, persistence, and pace, as well as his inability to tolerate stress and adapt.  [Doc. 13 at 11-12].  In response, the Commissioner first contends that the ALJ was not required to incorporate his step-three conclusion that Plaintiff has this moderate limitation into his RFC assessment.  [Doc. 19 at 16-17].  The Commissioner raises the same argument with respect to certain conclusions made by the medical providers in their Mental Residual Functional Capacity Assessment ("MRFCA") forms, asserting that the ALJ was not required to include the preliminary limitation assessments proffered by the providers—such as Plaintiff's moderate limitations in maintaining attention, working with others without distractions, or completing a normal workday—and was only required to incorporate the medical sources' formal, narrative RFC findings.  [*Id.* at 17].  Finally, the Commissioner argues that "the ALJ's RFC and limitation to unskilled work accommodated [Plaintiff's] limitations," asserting that "[t]here is a progeny of . . . Tenth Circuit decisions in which it has held that moderate limitations can be accounted for by limitations to unskilled work."  [*Id.* at 18].  The court addresses these arguments below.

### A.      The Scope of the RFC Assessment

Before determining whether the ALJ properly accounted for Plaintiff's moderate mental limitations, the court must first ascertain what the ALJ was required to include in his RFC assessment.  Plaintiff asserts that the ALJ erred in (1) failing to account for the step-three findings

of moderate mental limitations in his RFC assessment and (2) failing to account for all of the specific limitation opinions of the relevant medical providers. [Doc. 13 at 13-14]. In response, the Commissioner argues that "the Tenth Circuit has found that the ALJ is under no obligation to incorporate moderate limitations he found at step three . . . into his subsequent RFC," nor is the ALJ required to incorporate medical sources' non-narrative limitation opinions. [Doc. 19 at 17].

The court addresses Defendant's second argument first: that the ALJ need not consider the specific limitations in concentration, pace, or persistence identified Drs. Robinson and Suyeishi because those findings were "not part of the state agency psychologists' formal findings." [*Id.*]. While courts have held that in some circumstances, it may be appropriate for an ALJ to rely only on a provider's narrative RFC findings, "they do so with an important caveat: the [narrative] findings must adequately account for the [preliminary] findings." *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1164 (D.N.M. 2016).[8] Indeed, an ALJ cannot "turn a blind eye to any moderate limitations enumerated in [the worksheet portion] that are not adequately explained in [the narrative section]." *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015). "[A]n ALJ may only disregard limitations found in the worksheet portion when the narrative portion 'adequately encapsulate[s]' them." *Romero v. Kijakazi*, No. CV 21-249 KK, 2022 WL 1553295, at *10 (D.N.M. May 17, 2022) (quoting *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015)); *see also Fulton v. Colvin*, 631

---

[8] Case law often refers to the preliminary-question portion of the MRFCA form as "Section I" and the narrative portion as "Section III." *See, e.g.*, *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015); *see also* [Doc. 19 at 17 (the Commissioner stating that the narrative portion was "formerly known as Section III"). Although the electronic MRFCA form used by Drs. Robinson and Suyeishi does not expressly contain the same numbered sections as the traditional MRFCA form, the electronic form is the functional equivalent of the traditional form, *see Kim L.P. v. Saul*, No. 18-cv-552-JED-FHM, 2020 WL 5802927, at *3 (N.D. Okla. Sept. 29, 2020) (comparing the standard MRFCA form with the MRFCA form). and "[c]ase law discussing 'Section I' and 'Section III' . . . remains relevant." *Vargas v. Kijakazi*, No. CV 20-647 JFR, 2021 WL 5300070, at *4 n.6 (D.N.M. Nov. 15, 2021). Thus, this court will rely on case law analyzing this issue in the context of Sections I and III.

F. App'x 498, 502 (10th Cir. 2015) ("Where a psychologist's Section III narrative . . . describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC.").

Here, the narrative sections of Dr. Robinson's and Dr. Suyeishi's forms concerning D.G.'s limitations in concentration, pace, and persistence—which appear to be identical—state: "[Claimant] has the ability to do [simple, repetitive tasks], complex and detailed tasks.  [Claimant] may have lapses in [concentration, persistence, and pace] due to Y [symptoms]."  *See* [Doc. 12-3 at 102, 150].  The vague statement that D.G. "may have lapses" in his concentration, persistence, and pace does not meaningfully "describe the effect" that D.G.'s limitations in working with others without getting distracted, completing a normal workday or workweek, performing at a consistent pace without unreasonable breaks, or maintaining concentration for extended periods would have on his mental RFC.  *Cf. Jones v. Berryhill*, No. 1:15-cv-00842-LF, 2017 WL 3052748, at *6 (D.N.M. June 15, 2017) (narrative finding that the claimant could "make simple decisions, attend and concentrate for two hours at a time" failed to account for Section I finding that the claimant was moderately limited in performing at a consistent pace without unreasonable breaks); *compare Carver*, 600 F. App'x at 619 (the physician adequately accounted for a specific limitation in accepting instruction and responding to supervisor criticism by stating that the plaintiff could "relate to supervisors and peers on a superficial work basis").  Accordingly, the ALJ could not disregard the providers' non-narrative opinions concerning moderate limitations, as they were not adequately accounted for in their narrative findings.  *Jones*, 2017 WL 3052748, at *6.[9]

---

[9] The Commissioner cites *Fannin v. Commissioner*, 857 F. App'x 445, 447-48 (10th Cir. 2021), for the proposition that "[c]hallenges to whether an ALJ assessment of residual functional capacity incorporate[s] limitations in section I ask 'the wrong question." [Doc. 19 at 17].  *Fannin* does not

Next, Defendant maintains that an ALJ need not incorporate his or her findings of mental limitations at step three into the RFC assessment at step four. [Doc. 19 at 16-17]. Defendant is correct that the Tenth Circuit has disagreed with the proposition that the ALJ necessarily *must* incorporate limitations found at step three into the RFC assessment. *See Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). In *Beasley*, the court concluded that the ALJ "was under no obligation to include limitations in [the claimant's] social functioning" in the RFC "based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis," *id.*, and declined to issue a ruling "requiring an ALJ's RFC assessment to mirror his step three-findings." *Id.* at n.3. As noted by the court in *Beasley*, the step-two and -three determinations of mental impairments "are not an RFC assessment but are [instead] used to rate the severity of mental impairment(s)." SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." *Id.*

But Tenth Circuit case law does not support a categorical rule that an ALJ need not take step-three limitations into account when determining a claimant's RFC. While "the ALJ's description of the mental limitations at steps two and three is not an RFC assessment . . . that does not mean that an ALJ may stop there." *Willie v. Saul*, No. 19-cv-00329 SMV, 2020 WL 2065286, at *4 (D.N.M. Apr. 29, 2020) (citation omitted). Rather, having assessed certain mental limitations

---

change this courts analysis; in that case, the Tenth Circuit found no error in a hypothetical posed to a vocational expert where the hypothetical incorporated only the narrative, Section III findings, but where the Section III findings adequately explained and were consistent with the Section I findings. *Fannin*, 857 F. App'x at 447-48. Accordingly, *Fannin* does not change the court's conclusion that if a medical source's narrative findings do not account for the source's preliminary findings, the ALJ is required to address the preliminary findings, too.

at steps two and three, the ALJ is "required *either* to include corresponding limitations in the RFC assessment *or* to explain the omission." *Id.  See, e.g.*, *Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014) ("[T]he ALJ's failure to address concentration, persistence, and pace in his RFC analysis is puzzling given that at step three, he assessed [the claimant] with moderate limitations in this area. . . .  Nor does the decision otherwise explain why he did not include in the RFC any limitations in concentration, persistence, and pace."); *Miranda v. Barnhart*, 205 F. App'x 638, 643 (10th Cir. 2005) ("Given that he found moderate difficulties in the areas of concentration, persistence, or pace, the ALJ erred in not further addressing these factors in assessing [the claimant's] RFC.") (footnote omitted); *Vialpando v. Colvin*, No. 14-cv-01956-LTB, 2015 WL 8755063, at *8 (D. Colo. Dec. 15, 2015) ("While an ALJ may not be required to incorporate a finding of moderate limitations at step three into the RFC assessment in all cases, I conclude that the circumstances of this case . . . mandate that the ALJ at least explain why he chose not to incorporate the moderate difficulties he found Plaintiff had with regard to concentration into his assessment of her RFC.").

Indeed, in *Crowder*, the Tenth Circuit remanded the case to the ALJ for further consideration, directing that "[i]f the ALJ again chooses to assess moderate impairments in concentration, persistence, and pace at step three, but not to include any limitation on concentration, persistence, and pace in the RFC at step four, <u>he should explain the basis for his decision</u>." *Crowder*, 561 F. App'x at 746 (emphasis added).   And the Tenth Circuit's directive in *Crowder* is not undermined by its subsequent decision in *Beasley*.  In *Beasley*, the ALJ had expressly concluded in his decision that despite his finding that the claimant had limitations in social functioning, she could nevertheless "respond appropriately to supervision, co-workers, the

general public, and usual work situations," thus adequately explaining his decision to not include social-functioning limitations in the claimant's RFC. *Beasley*, 520 F. App'x at 754.

Accordingly, although the Commissioner's statement that an ALJ "is under no obligation to incorporate moderate limitations he found at step three in the paragraph B analysis into his subsequent RFC," [Doc. 19 at 17], might technically be correct, it is incomplete. While the ALJ need not automatically adopt step-three findings in the RFC assessment, if the ALJ chooses to not incorporate the step-three determinations into the RFC, the ALJ must explain the basis for this decision. *Willie*, 2020 WL 2065286, at \*4; *Crowder*, 561 F. App'x at 746. Having made these preliminary conclusions, the court turns to whether the ALJ accounted for Plaintiff's specific moderate limitations in concentration, persistence, and pace, and if not, whether the ALJ explained his decision to not do so.

### B.      Whether the RFC Adequately Accounts for Plaintiff's Mental Limitations

Turning to the Parties' substantive arguments, D.G. asserts that the ALJ's RFC assessment limiting Plaintiff to "simple, routine tasks" fails to account for, *inter alia*, his moderate limitations in concentration, persistence, and maintaining pace. [Doc. 13 at 12, 14-15]. The Commissioner responds that the "RFC and limitation to unskilled work accommodated these limitations" in concentration, pace, and persistence. [Doc. 19 at 18].

The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Commissioner*, 772 F. App'x 613, 616 (10th Cir. 2019) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)); *see also Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."). Indeed, a "claimant's functional ability is distinct from the skill level

required to perform a particular job." *Valdez v. Saul*, No. 17-cv-02610-PAB, 2020 WL 2832372, at *4 (D. Colo. June 1, 2020). "Because [an individual's] response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 (SSA 1985). Thus, an ALJ generally must account for moderate limitations "*with precision* in the ultimate determination of the claimant's residual functional capacity," and must express the claimant's moderate impairments in mental functioning "in terms of work-related functions" or "work-related activities." *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016) (emphasis added) (quotation and alteration marks omitted) (citing *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014)). Only if "the connection (between the limitation and the work) is *obvious*" may an ALJ "account for mental limitations by limiting the claimant to particular kinds of work." *Parker*, 772 F. App'x at 616 (emphasis added).

"[A] case-by-case analysis is required to determine whether an RFC's limitations adequately account for all impairments found by the ALJ and supported by the record." *Marquez-Hernandez v. Commissioner*, No. 17-cv-01513-MSK, 2018 WL 2328401, at *7 (D. Colo. May 22, 2018). Relevant here, concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate." 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00E(3). Examples include:

> Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id.* A moderate limitation in a certain area of mental functioning means that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, subpt. P, app. 1 Listing 12.00(F)(2)(c). A moderate impairment "is not the same as no impairment at all," *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), and it "must be accounted for in an RFC finding." *Jaramillo*, 576 F. App'x at 876.

### 1.     Simple Work

The ALJ's RFC assessment includes only the following mental limitations: "can perform simple, routine tasks; and can have occasional superficial contact with the general public and coworkers." [Doc. 12-2 at 22].[10] The ALJ explained that "[d]ue to the claimant's allegations of sporadic lapses in concentration, the undersigned finds he is limited to simple, routine tasks." [*Id.* at 25]. Finally, the ALJ also noted that although "[t]he claimant testified he is unable to work due to concentration problems," consultative examination records showed that he could "perform serial sevens, spell 'world' forward and backward, and complete a three-step command." [*Id.* at 23].

The court respectfully concludes that the limitation to performing simple, routine tasks does not obviously incorporate D.G.'s specific limitations in concentration, persistence, or pace: maintaining attention and concentration for extended periods, working with or in proximity to others without being distracted by them, or completing a normal workday and workweek without interruptions and to perform at a consistent pace without unreasonable breaks, which are functional abilities needed for <u>any</u> job. *See* Social Security Administration Program Operations Manual

---

[10] The limitation related to contact with the public "relates to social limitations and would not accommodate [D.G.'s] impairment as to concentration, persistence, or pace." *Marquez-Hernandez*, 2018 WL 2328401, at *4. Accordingly, the court does not address this limitation in this analysis.

System ("POMS")[11] DI § 25020.010(B)(2)(a). "[T]he ability to perform simple tasks differs from the ability to stay on task." *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). "It is the ability to stay on task—not the degree of complexity of the task itself—that is addressed by concentration and persistence." *Shaw v. Berryhill*, No. 1:16-cv-00285-LF, 2017 WL 4119617, at *6 (D.N.M. Sept. 15, 2017). Because the connection between the moderate limitations and the assignment of "simple, routine tasks" is not obvious, *Parker*, 772 F. App'x at 616, the mere limitation to simple work is insufficient, alone, to account for D.G.'s moderate limitations. *Edgell v. Kijakazi*, No. CV 21-269 KK, 2022 WL 1987846, at *2 (D.N.M. June 6, 2022) (concluding that the connection between "simple tasks for two hours at a time without requiring redirection to task" and the claimant's "impaired ability to complete a normal workday and workweek without interruptions . . . and perform at a consistent pace without an unreasonable number and length of rest periods [was] not clear.").

Other courts have concluded similarly. For example, in *Bosse v. Saul*, No. 2:18-cv-00475-LF, 2019 WL 3986046 (D.N.M. Aug. 23, 2019), the court concluded that an RFC limiting the claimant to "simple, routine, and repetitive tasks" failed to account for the claimant's moderate limitations in maintaining concentration for extended periods or completing a normal workday and workweek and performing at a consistent pace. *Id.* at *2, *8. *See also Umbenhower v. Colvin*, No. 13-1398-SAC, 2015 WL 1470494, at *3 (D. Kan. Mar. 31, 2015) (an RFC that limited the claimant to simple, routine, and repetitive tasks failed to "include any limitations in concentration and attention"); *Cordova v. Berryhill*, No. 17-cv-0611 SMV, 2018 WL 2138647, at *8 (D.N.M.

---

[11] "The POMS is 'a set of policies issued by the Administration to be used in processing claims.'" *Warren*, 170 F. Supp. 3d at 1364 n.7 (quoting *McNamar v. Apfel*, 172 F. 3d 764, 766 (10th Cir. 1999)). "The court 'defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Id.* (quoting *Ramey v. Reinertson*, 268 F.3d 955, 964 n. 2 (10th Cir. 2001) (alteration marks in original)).

May 9, 2018) ("Limiting Plaintiff to simple, routine (or unskilled) work, as the ALJ did here, does not account for moderate limitations in her ability to . . . to perform at a consistent pace without an unreasonable number and length of rest periods."). These cases are consistent with the Tenth Circuit's conclusion that limitations to simple, routine, and repetitive tasks do not clearly capture moderate limitations in the ability to concentrate. *See Jaramillo*, 576 F. App'x at 876. Rather, the ALJ must express those impairments "in terms of work-related functions" or "[w]ork-related mental activities." *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *6).

While the Commissioner cites to a number of cases in support of her argument that the ALJ's RFC adequately accounted for Plaintiff's mental limitations, the court respectfully disagrees that these cases should change the court's analysis. The Commissioner relies on *Smith*, 821 F.3d 1264, and *Vigil*, 805 F.3d 1199, for the proposition that the Tenth Circuit has "held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." [Doc. 19 at 18 (quoting *Smith*, 821 F.3d at 1269)]. In *Smith*, a medical source had opined that the claimant could engage in work that was, *inter alia*, "limited in complexity." *Smith*, 821 F.3d at 1268. After a fact-specific analysis, the Tenth Circuit concluded that the ALJ had sufficiently accounted for this limitation in the RFC assessment because the ALJ had stated that the claimant could engage in only simple, repetitive, and routine tasks. *Id.* at 1269. In other words, the connection between the medical source opinion—that the claimant could engage in tasks that were limited in complexity—and the RFC limitation—that the claimant could engage in only simple, repetitive, and routine tasks—was *obvious*. *See Parker*, 772 F. App'x at 616.

In *Vigil*, the claimant had moderate limitations in concentration, persistence, and pace such that he "could not be expected to perform complex tasks" but "retain[ed] enough memory and

concentration to perform at least simple tasks." *Vigil*, 805 F.3d at 1203-04.  The ALJ found that the claimant was "unable to perform complex tasks, such that he [was] limited to jobs with a specific vocational preparation ('SVP') of one or two," i.e., unskilled work.  *Id.* at 1201.  The Tenth Circuit found no error in the ALJ's RFC assessment, concluding that "*in this case*, . . . limiting the plaintiff to an SVP of only one or two[] adequately took into account his moderate limitations in concentration, persistence, and pace." *Id.* at 1204 (emphasis added).  Specifically, the Tenth Circuit noted that the limitation to unskilled work adequately accounted for Plaintiff's complexity-based limitations because unskilled work requires only carrying out simple instructions and making simple work-related decisions, but that concentration is "not critical." *Id.* (citing SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).  But "*Vigil* does not stand for the broad proposition that a limitation to unskilled work adequately addresses all moderate limitations in concentration, persistence and pace," *Bosse*, 2019 WL 3986046, at *7, and does not establish than an ALJ may account for a claimant's limitations in completing normal workdays or workweeks, working with others without getting distracted, or perform at a consistent pace by limiting the claimant to "simple" work.  Because *Vigil* and *Smith* are distinguishable from the instant matter, they do not alter this court's analysis.

In sum, the court concludes that the ALJ failed to incorporate D.G.'s specific moderate limitations in concentration, persistence, and maintaining pace into the RFC.  As such, the court's final task is to determine whether ALJ adequately explained his basis for not incorporating these limitations.  The court respectfully concludes that he did not.

### 2.    The ALJ's Basis for Disregarding Plaintiff's Moderate Limitations

Because the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace, he was required to explain his basis for doing so.  *Crowder*, 561 F. App'x

at 745.  Recall, at step three, the ALJ found that D.G. has a moderate limitation in concentration, persistence, and pace, stating that "Dr. Beasley observed the claimant was able to complete serial sevens and a three-step command, but reported difficulties reading."  [Doc. 12-2 at 22].  And Drs. Suyeishi and Robinson each found Plaintiff moderately limited in a number of areas, including completing a workday, working with others without distraction, and maintaining a consistent pace without unreasonable breaks.  [Doc. 12-3 at 102, 150].  The ALJ failed to incorporate these moderate limitations into Plaintiff's RFC.

The ALJ's discussion of Plaintiff's mental RFC is quite limited, stating only that "[t]he claimant's allegations are unsupported by the medical evidence of record. . . .  The claimant testified he is also unable to work due to concentration problems, but Dr. Beasley's psychological consultative examination shows he can perform serial sevens, spell 'world' forward and backward, and complete a three-step command."  [*Id.* at 23]; *see also* [Doc. 12-7 at 680].[12]  But the ALJ failed to mention or incorporate the moderate limitations suggested by Drs. Robinson and Suyeishi; in other words, "[t]he ALJ neither rejected any of the moderate limitations in [Dr. Suyeishi's or Dr. Robinson's] opinions, nor offered any explanation for doing so."  *Padilla v. Kijakazi*, No. 1:20-cv-00366-LF, 2021 WL 3030252, at *7 (D.N.M. July 19, 2021).

Moreover, the court cannot conclude that the ALJ's brief reference to Plaintiff's ability to "perform serial sevens, spell 'world' forward and backward, and complete a three step-command" is a sufficient explanation for including no moderate limitations in concentration, persistence, or pace in Plaintiff's RFC.  "Plaintiff's ability to sustain concentration, persistence and pace for a full

---

[12] The court notes, however, that Dr. Beasley's notes concerned D.G.'s "mental status"—not "functional information."  [Doc. 12-7 at 680].  In the "functional information" category, Dr. Beasley opined that with respect to concentration, persistence, and pace, D.G. reported that he had difficulties reading due to "poor concentration and he [could not] absorb what he does read.  Poor persistence."  [*Id.*].

day is a different measurement of his abilities than his orientation, attention and concentration in performing the serial sevens task and spelling 'world,'" *Murray v. Comm'r Soc. Sec. Admin.*, 226 F. Supp. 3d 1122, 1140 (D. Or. 2017), and the ability to spell a word backwards or perform serial sevens does not plainly demonstrate an ability to, for example, work at an appropriate and consistent pace, complete tasks in a timely manner, work close to or with others without interrupting or distracting them, or sustain an ordinary routine and regular attendance at work, *see* 20 C.F.R. § pt. 404, subpt. P, app. 1, Listing 12.00E(3), so as to support the ALJ's apparent conclusion that no mental limitations in Plaintiff's RFC were required.

For all of these reasons, the court concludes that the ALJ's failure to account for Plaintiff's mental limitations, and failure to adequately explain the reasons for rejecting those limitations, was in error. *See Parker*, 772 F. App'x at 617-18 (finding that the ALJ's failure to account for limitation in responding to routine changes in the work setting, coupled with the failure to explain why such limitation was rejected, was legal error and required reversal "even if the agency's findings are otherwise supported by substantial evidence"). As a result, remand is appropriate. *See Vienna*, 2019 WL 4686718, at *8 ("The ALJ erred in failing to incorporate or to explain why he rejected at least two moderate limitations assessed by [the physician] into [the claimant] RFC. . . . The Court remands so that the ALJ can remedy these errors."); *Padilla*, 2021 WL 3030252, at *6. The court declines to pass on the other arguments raised in D.G.'s briefing, as "they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). However, on remand, the administrative law judge is directed to consider other issues raised in D.G.'s briefing and to modify the decision as appropriate.

**CONCLUSION**

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter for further proceedings consistent with this Memorandum Opinion and Order.[13]

DATED:  July 11, 2022                    BY THE COURT:

                                         Nina Y. Wang
                                         United States Magistrate Judge

---

[13] In his Opening Brief, Plaintiff requests that the court award him attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412. [Doc. 13 at 20].  The EAJA states that "[a] party seeking an award of fees and other expenses shall, <u>within thirty days of final judgment in the action</u>, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed."  28 U.S.C.A. § 2412(d)(1)(B) (emphasis added). The Supreme Court has instructed that this clock begins to run once the 60-day period for filing a notice of appeal has expired. *Shalala v. Schaefer*, 509 U.S. 292, 295 (1993). Accordingly, Plaintiff's request is premature.  He may file a motion for EAJA fees at the appropriate time, after conferral with Defendant as required by the Local Rules. *See* D.C.COLO.LCivR 7.1.